**THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AMIT AGARWAL,

Plaintiff,

v.

TOPGOLF INTERNATIONAL, INC.,

Defendant.

Case 8:16-cv-02641-VMC-JSS

**DEFENDANT TOPGOLF'S UNOPPOSED MOTION TO STAY THE CASE PENDING *INTER PARTES REVIEW* PROCEEDINGS AT THE PATENT OFFICE**

Defendant Topgolf moves to stay the claims filed against it by Plaintiff Amit Agarwal pending the Patent Office's resolution of Topgolf's petition for *inter partes* review. The parties have conferred, and Plaintiff does not oppose a stay pending IPR.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This is a patent infringement case in which the plaintiff has accused Topgolf of having infringed claims 1 and 6 of U.S. Patent 5,370,389. (Doc. No. 1.) Topgolf filed a petition with the Patent Office today seeking *inter partes* review of all asserted claims. (Ex. A.) Topgolf is now immediately moving to stay this case pending the Patent Office's decision on Topgolf's petition, as such a stay will simplify (and perhaps eliminate) the issues for litigation, reduce the burden on the Court and the parties, and not impose any undue prejudice or clear tactical disadvantage on the plaintiff. This Court recently granted such a stay based on the filing of an IPR petition in *The Andersons, Inc. v. Enviro Granulation,*

*LLC*, 2014 WL 4059886, at *1 (M.D. Fla. Aug. 14, 2014) (Covington, J.), finding that these same factors warranted waiting to litigate the case until the Patent Office had resolved the IPR. Topgolf thus respectfully submits that a stay is also appropriate here, particularly given the parties' agreement that the case should be stayed.

## II. STATEMENT OF FACTS

### A. Background on the '389 Patent.

The '389 patent covers a golf game at a driving range where a player strikes a golf ball on a tee and seeks to score points by hitting the ball into a hole on one of "a plurality of target greens." (Ex. B at 2:7-12, 9:24-68.) Each "target green" is sloped so that the highest point is in the rear while the front of the green is also higher than the hole, creating a sloped surface that causes a ball landing anywhere on the target green to roll into the hole by the force of gravity. (*Id*. at 2:37-40, 4:32-36.) Each hole has a sensor that can detect the entry of a ball, and each player's balls include a unique "identifying characteristic," like a distinct color or barcode, so that the sensor can determine which player hit which ball. (*Id*. at 2:57-59, 6:52-58, 9:28-30, Fig. 1.) Players score points based on which target green they hit. (*Id*. at 8:14-25, 2:57-59.) The driving range also includes a scoring device at each tee, so players can see their scores as they play. (*Id*. at 2:60-62, 2:17-22, 9:66-68.)

Asserted claims 1 and 6 reflect these aspects of the specification, and, in particular, require a target green with an "asymmetric concave shape" where the hole is off-center and substantially closer to the front of the green than to the rear of the green, and where the rear of the green is higher in elevation than the front of the green. (*Id*. at 9:23-68, 10:18-21.)

### B. Topgolf's Request for *Inter Partes* Review.

While Topgolf was preparing its invalidity contentions in this case, it discovered a prior art patent—U.S. Patent 5,439,244 to Bertoncino—that discloses the same types of target greens, with the same slope, as those in the '389 patent-in-suit. (Ex. C.) The Patent Office did not consider Bertoncino during its initial examination of the '389 patent.

Like the '389 patent, Bertoncino discloses a golf game in which players at multiple tees can score points by hitting the ball into the hole at one of several target greens. The golf balls of Bertoncino each have a barcode as the "identifying characteristic," just as in the '389 patent, and each hole has scanners that can read the barcode and associate it with the tee and player who hit the ball. (Ex. C at 9:63-10:5, 4:30-63, Figs. 1, 6, 7.) As in the '389 patent, Bertoncino's system automatically assigns a score to each shot based on which target the player hits, with different point values for each target. (Ex. C at 8:55-63, 9:11-22, 10:18-54.)

Each green is sloped so that the highest point is in the rear, while the front of the green is at a lower elevation. (Ex. C at 5:37-39, Fig. 5.) Bertoncino explains that its target greens can have one or more sections, and its Figure 4 shows a side view of a target green with three sections, in which the center section (22) has the asymmetric, concave shape recited in the '389 patent claims, where the hole is substantially closer to the front than the rear of the green. (Ex. C at 5:37-6:11, Figs. 3, 4.) Bertoncino further discloses that the target green may include a "single section 22" with a "single cup" at its lowest point. (Ex. C at 6:61-65, 5:47-52.) Topgolf has submitted expert testimony to the Patent Office explaining these disclosures in Bertoncino would thus disclose the very same target green with the same

slope as that claimed in the ’389 patent, and that Bertoncino, when combined with other prior art, renders all the asserted claims of the ’389 patent obvious. (*See*, Ex. A.)

### C. This Case is in Its Infancy, as only Minimal Discovery Has Taken Place and the Claim Construction Deadlines Have Not Yet Arrived.

This case is still in its early stages. Plaintiff filed his complaint on September 14, 2016, and Topgolf promptly moved to dismiss it on November 7, 2016. (Doc. No. 27.) Topgolf served its invalidity contentions on February 3, 2017, following the deadline in the Court’s scheduling order. (Doc. No. 23 at 1.) Topgolf then promptly filed its petition for *inter partes* review with the Patent Office on February 16, 2017. (Ex. A.)

The parties have engaged in only minimal discovery, and the next set of deadlines are related to claim construction, but they have not yet arrived. In particular, the Scheduling Order sets the following dates for those events:

- Exchange proposed terms for construction: March 3, 2017
- Exchange of preliminary claim constructions and evidence: March 17, 2017
- Parties to file joint claim construction statement: March 31, 2017
- Claim Construction Discovery Deadline: April 14, 2017
- Mediation Deadline: May 1, 2017
- Plaintiff’s Opening Brief: May 15, 2017
- Defendant’s Opposition Brief: June 1, 2017
- Plaintiff’s Reply Brief: June 12, 2017
- Claim Construction Hearing: TBD

(Doc. No. 23 at 2.) A stay would eliminate the need for some or all of these exchanges, and, in particular, would save the parties and the Court the time and expense of briefing, arguing, and resolving claim construction issues. No discovery deadline, expert schedule, or trial date has been set. (*Id.*)

## III. LEGAL STANDARDS

### A. Background on *Inter Partes* Review.

*Inter partes* review was created by Congress in the Leahy-Smith America Invents Act in response to perceived deficiencies in an older administrative proceeding called an inter partes reexamination. *See generally* 35 U.S.C. § 311-319. "The inter partes review process, initiated on September 16, 2012, 'is designed to improve upon the previous inter partes re-examination process by (1) reducing to 12 months the time the PTO spends reviewing validity, from the previous reexamination average of 36.2 months; (2) minimizing duplicative efforts by increasing coordination between district court litigation and inter partes review; and (3) allowing limited discovery in the review proceedings." *The Andersons, Inc. v. Enviro Granulation, LLC*, 2014 WL 4059886, at *1 (M.D. Fla. Aug. 14, 2014) (Covington, J.) (quoting *Automatic Mfg. Sys. v. Primera Tech.*, No. 6:12-cv-1727-RBD-DAB, 2013 WL 6133763, at *2 (M.D. Fla. Nov. 21, 2013)). After a petition for inter partes review is filed, the patent owner has three months to submit a preliminary response. 35 U.S.C. § 313. Within three months of that date, the USPTO will institute a review if "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). The deadline for the Patent Office's institution decision here is in mid-August 2017, within 6 months of Topgolf's petition.

### B. Standards for Staying Litigation Pending an *Inter Partes* Review Petition and Any Subsequent PTO Proceedings.

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO" proceeding. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). "The party moving for a stay bears the burden of demonstrating that a stay is appropriate." *Andersons*, 2014 WL 4059886, at *2. "In patent cases, a number of courts reason that such stays should be liberally granted when there is a pending administrative proceeding pending before the USPTO." *Id*. (*quoting Automatic Manufacturing Systems, Inc. v. Primera Tech., Inc.*, No. 6:12-cv-1727-RBD-DAB, 2013 WL 1969247, at *1 (M.D. Fla. May 13, 2013)). "This policy stems from recognition that granting a stay can avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply avoid the needless waste of judicial resources, especially if the evidence suggests that the patents-in-suit will not survive reexamination." *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, 2015 WL 545534, at *2 (N.D. Cal. Feb. 9, 2015).

"In determining whether to stay patent infringement litigation pending inter partes review, courts consider the following factors, among other individualized considerations: (1) whether the stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay will reduce the burden of litigation on the participants or the court." *Andersons*, 2014 WL 4059886, at *2. "Courts also consider 'whether discovery is complete and whether a trial date has been set.'" *Id*. (*quoting Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 633 F. Supp. 2d 1341, 1347 (S.D. Fla. 2008)).

Applying these factors, courts in this District have routinely stayed cases upon the filing of an IPR petition, where, as here, a stay would help streamline the case, save the parties and the Court significant time, and impose little or no prejudice on the plaintiff. *See, e.g.*, *Andersons*, 2014 WL 4059886, at *2*; Patent Asset Licensing, LLC v. Bright House Networks, LLC*, 2016 WL 4431574 (M.D. Fla. Aug. 22, 2016); *CANVS Corp. v. Nivisys, LLC*, 2014 WL 6883123 (M.D. Fla. Dec. 5, 2014); *Capriola Corp. v. Larose Indus.*, 2013 WL 1868344 (M.D. Fla. Mar. 11, 2013). We discuss these cases further below.

## IV. ARGUMENT

Topgolf respectfully asks the Court to stay this litigation pending the Patent Office's decision on Topgolf's request for *inter partes* review. Each relevant factor favors a stay.

### A. A Stay Will Simplify the Issues and May Completely Eliminate the Need for Further Litigation in this Court.

Granting a stay will greatly simplify the issues for the Court to decide in litigation, and it may result in eliminating this case altogether. Topgolf's *inter partes* review petition presents substantial questions regarding the '389 patent's validity by presenting prior art that the Patent Office was unable to consider during its initial examination, and it challenges every claim (*i.e.* claims 1 and 6) that Plaintiff has asserted in this case. It is highly likely that the Patent Office will institute *inter partes* review, given both the strength of the particular arguments here, and the general statistics showing that over 70% of similar petitions are granted. (Ex. D at 7.) If the Patent Office does institute review, there is an even higher likelihood that the claims will be invalidated, cancelled, or that the case will settle—only 10% of instituted IPRs on mechanical patents like the '389 patent result in the claims being held patentable. (*Id.* at 14.) That would eliminate this case entirely. Moreover, an *inter*

*partes* review would simplify the issues here even if the Patent Office does not institute review, or even if the claims survive *inter partes* review after it is instituted. Even if the Patent Office denies institution or holds the claims patentable, a stay will simplify the issues, because a statutory estoppel that would also preclude Topgolf from asserting the same defenses in litigation. *See* 35 U.S.C. § 315(e)(2). Topgolf thus submits that this factor weighs heavily in favor of a stay.

This Court has previously found that these considerations show a stay is appropriate to simplify the case. For example, in *Andersons*, this Court explained that "absent a stay, the litigants and the Court will invariably expend significant time and resources 'conducting discovery, engaging in claim construction and preparing for [trial]. A decision by the Patent Office to grant *inter partes* review of the Patents-in-Suit could render these efforts moot and cause the parties to considerably revamp their positions and take additional discovery.'" *See* 2014 WL 4059886, at *4 (quoting Defendants' brief). This Court also explained that "because each of the Patents–in–Suit have been challenged in Defendants' petitions for *inter partes* review, the PTO is in a position to significantly streamline and focus the issues to be decided by this Court," and added that "if the PTO declines inter partes review, little time is lost, but if the PTO grants inter partes review, the promise is greater for an important contribution by the PTO to[ward] resolution of the governing issues in the litigation." *Id*.

Other courts in this District have likewise granted stays based upon the filing of an *inter partes* review and have recognized the enormous simplification benefits of a stay. For example, *Patent Asset Licensing* determined that a stay pending the Patent Office's decision on whether to institute would simplify the issues, because "[i]f the PTAB invalidates some of

the asserted claims, this Court will have fewer claim terms to construe and analyze for infringement," and "if the PTAB invalidates all of the asserted claims, [plaintiff's] lawsuits will be moot." *See* 2016 WL 4431574, at *4. The Court added that, even if the claims were not invalidated "the Court also will be aided by the interpretation offered by the PTAB" when performing claim construction. Likewise, in *CANVS*, the Court stayed a case upon the filing of an IPR petition and concluded that this was "likely to simplify the issues and streamline the trial," noting the same reasons discussed in the other cases, and adding that it "is also advantageous for the PTO, with its recognized legal and technical expertise, to address the unpatentability arguments first." *See* 2014 WL 6883123, at *3. The Court further added that a stay "has several other well established benefits, including encouraging settlement without further Court assistance and reducing the costs and efforts associated with needlessly duplicative discovery" *Id.* And the Court stressed that "[a]bsent a stay, the litigants and Court will invariably expend significant time and resources engaging in claim construction, filing dispositive motions, and preparing for trial," and that "[t]his time and effort would be wasted if the PTO's decision on the inter partes review drastically alters the nature of the case." *Id.* Likewise, *Capriola* cited similar factors, staying a case in a procedurally similar posture, and listing the "concrete, numerous, and well-recognized benefits of resort to the PTO," such as "(1) furthering judicial economy; (2) determining validity; (3) focusing the issues, defenses, and evidence; (4) developing the prior art and prosecution history; (5) obtaining the PTO's particular expertise; (6) encouraging settlement; and (7) reducing costs to the parties." *See* 2013 WL 1868344, at *1. These same considerations all apply equally here.

### B. A Stay Will Reduce the Burden of Litigation on the Parties and the Court, Especially Given the Early Stage of the Case.

Staying this case would also reduce the litigation burden on the parties and the Court, which is another strong factor favoring a stay. The same considerations discussed above apply equally here. A stay will reduce the burden on the parties and the Court by preventing litigation over issues that may become moot if the Patent Office finds the claims unpatentable and by streamlining the issues to be decided even if the Patent Office finds the claims patentable, while also giving the Court the benefit of the Patent Office's expertise on validity and claim construction issues. *See Andersons*, 2014 WL 4059886, at *4; *see also Patent Assets Licensing*, 2016 WL 4431574, at *4; *CANVS*, 2014 WL 6883123, at *3, *Capriola*, 2013 WL 1868344, at *1.

A stay is particularly beneficial here because this case is in its early stages, increasing the amount of time and resources that the Court and the parties will save through a stay. The parties have engaged little discovery so far. Moreover, the parties' claim construction briefing will not begin for nearly 3 months, and no *Markman* hearing has yet been set, so a stay would avoid the need for the Court and the parties to expend time and resources on those proceedings. Indeed, the Patent Office will render its institution decision by mid-August 2017, which is around when any *Markman* hearing would likely be held. Topgolf was also prompt in filings its petition for *inter partes* review and stay motion, preparing both within 2 weeks after the prior art searches culminating in its February 3, 2017 invalidity contentions.

This Court and other Courts have previously recognized that a stay reduces the burden on the parties and the Court where, as here, discovery is in its infancy and no claim construction order has been issued. *See, e.g.*, *Patent Asset Licensing*, 2016 WL 4431574, at

*4 (granting stay, noting that "courts in this Circuit have stayed litigation even after, as here, a joint claim construction statement has been filed," and that "[i]t simply does not make sense for the parties and the Court to do the heavy lifting required" to prepare for a claim construction hearing one week before the PTAB would issue its decision whether to institute the IPR); *Andersons*, 2014 WL 4059886, at *3 (finding the procedural posture favored a stay where claim construction had not yet occurred and trial was set more than a year in the future); *CANVS*, 2014 WL 6883123, at *4 (finding the stage of the case warranted a stay even where the opening claim construction brief had been filed, because the briefing was still ongoing, a *Markman* hearing had not yet been held, no summary judgment briefs had been filed, and the discovery deadline and trial were still months away). Indeed, this case is at an earlier stage than several of those just cited, because claim construction briefing has not even begun, so a stay could generate even greater time-savings for both the Court and the parties.

### C. A Stay Will Not Unduly Prejudice Plaintiff or Present a Clear Tactical Disadvantage to Him.

Finally, granting a stay will not unduly prejudice the plaintiff or impose a clear tactical disadvantage, nor would any such effect outweigh the other significant benefits of a stay discussed above. As an initial matter, the parties here are not competitors and the patent is expired, so plaintiff has no argument that a stay would inflict irreparable harm. The plaintiff's claim is instead limited to a request for past damages based on Topgolf's activity from September 2010 to September 2012, when the patent expired. (*See, e.g.,* Doc. No. 1 at ¶ 5.) Given that no infringement suit on the '389 patent was brought until nearly 4 years after it expired, a short additional stay to allow the Patent Office to assess its validity would not be unduly prejudicial nor would it present a clear tactical disadvantage. *See, e.g., Patent*

*Asset Licensing*, 2016 WL 4431574, at *3 (finding no undue prejudice where the plaintiff "is a non-practicing entity and is thus not in competition with the defendants, has not sought a preliminary injunction, and seeks only monetary damages"). If the Patent Office invalidates the patent, then it will eliminate any damages claim the plaintiff has, while if the Patent Office does not invalidate the patent, then plaintiff can continue to pursue the past damages claim without suffering any additional harm.

## V. CONCLUSION

For the reasons above, Topgolf respectfully requests that the Court grant its unopposed motion to stay the case pending the Patent Office's decision on its petition for *inter partes* review. Topgolf requests that the stay continue through the Patent Office's decision on its petition, and then, if the Patent Office institutes an IPR, also continues through the end of the IPR proceedings.

Date: February 16, 2017

Respectfully submitted,

FISH & RICHARDSON P.C.

By: ___/s/ *Craig E. Countryman* ___

Craig E. Countryman *(Pro Hac Vice)*
California Bar No. 244601
countryman@fr.com
Nicole Williams *(Pro Hac Vice)*
California Bar No. 291900
nwilliams@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Phone: (858) 678-5070
Fax: (858) 678-5099

Natalie Arbaugh *(Pro Hac Vice)*
Texas Bar No. 24033378
arbaugh@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Phone: (214) 747-5070
Fax: (214) 747-2091

Stephen R. Senn__
Florida Bar No. 0833878
ssenn@petersonmyers.com
Post Office Box 24628
Lakeland, FL 33802-4628
Telephone: (863) 683-6511
Facsimile: (863) 682-8031
Fax: (858) 678-5099

Attorneys for Defendant
TOPGOLF INTERNATIONAL, INC.

## CERTIFICATE OF CONFERENCE PURSUANT TO L.R. 3.01(g)

I certify that counsel for Topgolf conferred in good faith with the plaintiff regarding this motion before filing and understand that the plaintiff does not oppose this motion.

***/s/ Craig E. Countryman***
**Craig E. Countryman**

## CERTIFICATE OF SERVICE

I certify that on this February 16, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following, and that a copy of the foregoing was also forwarded via electronic mail to the following:

Amit Agarwal
14420 Edinburgh Moor
Dr. Wimauma, FL 33598
ama7386@gmail.com
*PRO SE*

***/s/ Craig E. Countryman***
**Craig E. Countryman**